**The STATE of Ohio, Appellee,**

**v.**

**LOGAN, Appellant.**

[Cite as *State v. Logan* (1991), 77 Ohio App.3d 333.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–460.

Decided Sept. 24, 1991.

334

*Michael Miller,* Prosecuting Attorney, and *Alan C. Travis,* for appellee.

*James Kura,* Franklin County Public Defender, and *John W. Keeling,* for appellant.

BOWMAN, Presiding Judge.

Defendant-appellant, Steven J. Logan, appeals his conviction on one count of obstructing justice as prohibited by R.C. 2921.32. Appellant was convicted on

March 25, 1991, after trial to the court and sentenced to a one year determinate sentence and costs.

On June 14, 1990, Detectives Michael Turner and Zachary Scott of the Franklin County Sheriff's Office went to a house located at 266 South Harris Avenue in Columbus with an arrest warrant for a woman they knew only as "Bea." The arrest warrant was based on information supplied by Detective Scott, who, while undercover, had purchased drugs, identified only as pharmaceuticals, from "Bea" on the porch of that residence. As the detectives drove by the house, they saw a woman Scott recognized as "Bea" standing on the porch. Appellant was inside the house and appeared to be repairing a screen door. The detectives called for a uniformed deputy to serve the warrant. Meanwhile, "Bea" apparently went inside the house.

After calling for a uniformed officer, Scott went to the rear door, Turner remained at the front. When a deputy arrived to serve the arrest warrant, Scott and the deputy went to the front door while Turner guarded the back of the house. When appellant answered the door, Scott asked him if "Bea" was home. Appellant answered she was not. Scott told appellant he had a warrant for "Bea's" arrest and asked to enter the house to look for "Bea"; however, appellant refused and told Scott to get a search warrant.

During the conversation between Scott and appellant, Turner left the scene and phoned Sergeant Michael Powell to request a search warrant. By the time Powell arrived with the warrant, appellant had consented to the search. Upon entering the house and conducting a search, officers found a woman in the attic. Appellant was indicted in October 1990 for obstructing justice and, subsequently, waived his right to a jury trial.

On March 20, 1991, the trial court convicted appellant, stating the fact that appellant lied about whether "Bea" was inside the house, coupled with appellant's refusal to immediately consent to the search, constituted proof of guilt beyond a reasonable doubt.

Appellant sets forth the following assignments of error:

"The trial court erred by entering a judgment of conviction against the defendant for obstructing justice when the evidence was insufficient to support the conviction and when the conviction was against the manifest weight of the evidence."

In addressing an argument that appellant's conviction was against the manifest weight of the evidence, this court may not reverse the conviction " * * * where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. * * * " *State v. Eskridge* (1988), 38 Ohio St.3d

56, 526 N.E.2d 304, paragraph two of the syllabus. In reviewing the sufficiency of the evidence, the issue is whether there was sufficient evidence presented which, " * * * if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. * * * " *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

R.C. 2921.32 provides in part:

"(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:

"(1) Harbor or conceal such other person[.]"

In addition to these statutory elements, obstructing justice also involves the commission of an underlying crime by another, which must be proven through evidence going beyond a mere statement or allegation that a crime was committed. *State v. Bronaugh* (1980), 69 Ohio App.2d 24, 23 O.O.3d 23, 429 N.E.2d 1084. Moreover, the obstruction of justice cannot be merely comprised of an oral misstatement. See *Columbus v. Fisher* (1978), 53 Ohio St.2d 25, 7 O.O.3d 78, 372 N.E.2d 583 (utterance of unsworn oral misstatements in response to inquiries by law enforcement officials is not punishable conduct).

Therefore, to support a conviction, the state was required to present evidence beyond a reasonable doubt that:

(1) Appellant,

(2) with purpose to hinder the discovery, apprehension, prosecution, conviction or punishment of "Bea," or to assist "Bea" to benefit from the commission of a crime;

(3) harbored or concealed "Bea";

(4) through conduct which went beyond a mere oral misstatement; and

(5) that "Bea" had committed a crime.

The trial court specifically based its decision only upon appellant's "oral misstatement" that "Bea" was not in the house, and appellant's refusal to immediately consent to the search. In fulfilling its duty, the trial court could not focus upon only two aspects of the evidence in this case, but had a duty to find that each element of the offense had been proved beyond a reasonable doubt. Because the record indicates that the state presented insufficient evidence to prove appellant's guilt beyond a reasonable doubt, appellant's assignment of error is well taken.

The state failed to present evidence that appellant's purpose in denying entry to the officers was to hinder the discovery and apprehension of "Bea,"

that "Bea" was the woman later found to be hiding in the attic, that appellant knew "Bea" was still inside the house, and that appellant had sufficient connection to or authority over the residence to consent to a search. Arguably, given the Ohio Supreme Court's recent decision in *Jenks, supra,* there could be sufficient evidence that "Bea" had committed a crime for purposes of the obstructing justice statute.

The state did not present evidence indicating that appellant harbored or concealed "Bea," or acted with purpose to hinder her discovery or apprehension. The evidence merely showed that appellant answered the door, and told the officers that "Bea" was not there, and that the officers should get a search warrant. There was an undefined period of time between the officers' first observation of "Bea" on the porch and entering the house, and when the rear door was secured. Hence, there was no evidence on which the court could base a finding that appellant knew "Bea" remained in the house, or knew she was hiding from the deputies or that her discovery or apprehension was being aided by appellant.

■ The evidence is unclear as to whether the officers immediately told appellant they had an arrest warrant for "Bea" and whether the officers informed appellant that their arrest warrant authorized their entry in order to search for "Bea." Consent is not an exception to the warrant rule but, rather, a decision to waive the Fourth Amendment's requirement that a warrant precede a government search. Thus, appellant argues his decision not to waive his Fourth Amendment rights cannot be a basis for conviction of a crime. In response, appellee, citing *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, contends that the officers' arrest warrant gave them a right to enter the house.

A review of the record shows that there is little or no evidence as to appellant's or "Bea's" connection to 266 South Harris. One officer stated that appellant told him "[h]e [appellant] stated he was there off and on. There was another place he stayed at, also." The other officer never asked appellant's status as to the house. One officer assumed "Bea" lived there because he had purchased drugs from her there on one occasion.

In *Payton,* the police went to Payton's apartment with the purpose of arresting him for murder, although the police did not have a warrant for his arrest. While unsuccessful in finding Payton at the apartment, the police did find and seize a shell casing that was later admitted into evidence at his trial. The United States Supreme Court held that the Fourth Amendment prohibited a warrantless entry into a suspect's home to make a routine felony arrest. The court in *Payton,* however, further stated that an arrest warrant based on probable cause carried with it limited authority to enter a suspect's house for

the purpose of arresting him when the suspect was reasonably believed to be present in the house.

In *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38, the court held that a search warrant, not an arrest warrant, was required to enter the house of a third party to search for the subject of an arrest warrant.

■ Here, as discussed above, there is a paucity of evidence as to the relationship of appellant or "Bea" to the property to be searched. If appellant was not a resident at 266 South Harris or did not have "common authority" over the premises, *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242, his consent to enter was not required and whether he demanded the officers obtain a search warrant was, therefore, irrelevant to their authority to enter the house. If appellant was a resident and the officers were looking for "Bea," a third party, he could properly demand the officers obtain a search warrant. *Steagald, supra.* If appellant and "Bea" were both residents of 266 South Harris, the officers' arrest warrant would have given them authority to enter the house to arrest "Bea" and appellant could not properly hinder the officers' entry to execute the warrant. Merely asking the officers to obtain a search warrant, whether or not a search warrant was required, is not hindering or obstructing justice. Appellant had no duty to consent to the search; rather, appellant's duty was not to hinder execution of a proper warrant.

Given the limited record before this court, we cannot find the state established a sufficient nexus between appellant and 266 South Harris for the court to find beyond a reasonable doubt the arrest warrant for "Bea" was sufficient to require him to allow the officers' entrance into the premises, or that his action hindered or obstructed justice.

Because we find the trial court could not have reasonably concluded that all of the elements of the crime of obstructing justice were proved by the state beyond a reasonable doubt, appellant's assignment of error is sustained. The judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and TYACK, JJ., concur.