OPINION
{¶ 1} Jean R. Pauer, appeals from the judgment of the Geauga County Court of Common Pleas, entered following a bench trial, on Betty B. Langaa and Kurt T. Liedtke's claims for fraudulent conveyance and foreclosure. Langaa has filed a cross appeal. We affirm.
 {¶ 2} In 2001, Pauer filed an action in the Cuyahoga Court of Common Pleas against Langaa and Liedtke for trespass. Langaa filed a counterclaim seeking sanctions and attorney fees for Pauer's alleged frivolous litigation. The Cuyahoga County Court of Common Pleas entered summary judgment in favor of Langaa and Liedtke on Pauer's claims. On August 2, 2002, the Cuyahoga County Court of Common Pleas awarded Langaa sanctions of $26,562.19 plus interest. The court awarded Liedtke $587.08. Langaa and Liedtke filed certificates of judgment liens in these amounts with the Cuyahoga County Clerk of Court and established judgment liens. Those judgment liens were then transferred to the Geauga County Clerk of Courts.
 {¶ 3} On March 10, 2003, Langaa filed the instant action for rescission of fraudulent conveyances and foreclosure against Pauer, et al., in the Geauga County Court of Common Pleas. Langaa's action sought to rescind conveyances of Pauer's real estate to Pauer's daughter, Janelle Pauer, and to foreclose on that real estate to satisfy Langaa's judgment. Liedtke filed a cross-claim against Pauer alleging the same causes of action.
 {¶ 4} In the meanwhile, Pauer prosecuted an appeal to the Eighth District Court of Appeals. On April 22, 2004, that court vacated a portion of the sanction award in favor of Langaa, but otherwise affirmed the trial court's judgment. Pauer v. Langaa, 8th Dist. No. 83232,2004-Ohio-2019, ¶ 14-15.
 {¶ 5} After the Eighth District rendered its judgment, Langaa moved the Geauga County Court of Common Pleas to amend her pleadings to reflect the lesser amount due. The trial court granted Langaa's motion and the matter proceeded to a bench trial. The trial court found in favor of Langaa and Liedtke on their claims for fraudulent conveyance and ordered rescission of the conveyance and foreclosure of the property. Pauer appeals from the trial court's judgment raising five assignments of error:
 {¶ 6} "[1.] The trial court erred as a matter of law when it denied Jean Pauer's [m]otion to [d]ismiss the [c]omplaint and [c]ross [c]laims for [l]ack of [s]ubject [m]atter [j]urisdiction."
 {¶ 7} "[2.] The trial court erred in its decision that the conveyances on January 2, 2002 and May 30, 2002, expressly violated R.C. 1336.04, and that said conveyances constituted a transfer that was fraudulent as to Jean Pauer's creditors, in that such transfer was made with the intent to hinder, delay, or defraud said creditors and the trial court's decision is against the manifest weight of the evidence."
 {¶ 8} "[3.] The trial court erred in failing to hold a jury trial when a trial by jury had been properly demanded as provided by [Civ.R.] 38(B) and the [c]ourt did not satisfy any requirements for waiver of the right to jury trial pursuant to [Civ.R.] 39(A)."
 {¶ 9} "[4.] The trial court erred to the prejudice of defendant-appellant and abused its discretion when it ordered defendant-appellant to pay court costs."
 {¶ 10} "[5.] The trial court erred to the prejudice of defendant-appellant and abused its discretion in not admitting into evidence at trial, testimony and documentary evidence that was germane and relevant to the circumstances surrounding the issue of Jean's solvency."
 {¶ 11} In her first assignment of error, Pauer argues the trial court lacked subject matter jurisdiction because Langaa and Liedtke failed to obtain new judgment liens or certificates of judgment liens reflecting the decrease in the amount of sanctions as ordered by the Eighth District Court of Appeals. In essence, Pauer argues the trial court issued its judgment of foreclosure based on a judgment that was void ab initio. We disagree.
 {¶ 12} In its decision on Pauer's appeal, the Eighth District vacated only a portion of the sanctions. Pauer, supra at ¶ 14. The court stated:
 {¶ 13} "After a review of the record, including the attorney's fee bill and the court docket, we find that the award of sanctions should be reduced by $5,445. We determined that 35.3 hours in attorney's fees and $150 in filing fees related to the Geauga case; thus the judgment is voidonly as to those fees." (Emphasis added.) Id.
 {¶ 14} Because only a portion of the award was vacated, the judgment was still valid, and thus the certificates of judgment lien were likewise valid.
 {¶ 15} Pauer cites Merrill Lynch, Pierce, Fenner, Smith, Inc. v.Stark (1991), 75 Ohio App.3d 611 in support of her argument; however, in that case this court found that another appellate court had vacated the entire judgment for attorney fees and remanded the matter to the trial court for a new determination. Id. at 614-615. Here, the award was not vacated in its entirety, but only modified; thus, the underlying judgment remained valid, albeit at a lesser amount. This discrepancy was corrected when the trial court granted Langaa's motion to amend her pleadings to reflect the lesser amount.
 {¶ 16} Appellant's first assignment of error is without merit.
 {¶ 17} In her second assignment of error, appellant argues the trial court's judgment finding the conveyances to her daughter to be fraudulent were against the manifest weight of the evidence.
 {¶ 18} The evidence established Pauer made the following conveyances of her property:
 {¶ 19} On January 4, 2002, Pauer conveyed the property to the JJJ Pauer Revocable trust, a trust that did not exist, and of which Pauer was purported to be the trustee.
 {¶ 20} On May 30, 2002, Pauer, as trustee, conveyed the property to the JM Pauer Revocable Trust. Her daughter, Janelle Pauer was the sole trustee of this trust. Again, this trust did not exist.
 {¶ 21} On November 8, 2002, Janelle Pauer, as trustee, conveyed the property to Jean Pauer as trustee of the JJJ Pauer Revocable Trust (that still did not exist.) Pauer, as trustee, conveyed the property to Pauer individually. Pauer then conveyed the property to Janelle individually.
 {¶ 22} No consideration was paid in any of these transactions.
 {¶ 23} We will not reverse a judgment that is supported by some competent, credible evidence going to the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus. The trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of their testimony; therefore, we presume that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. Shore, Shirley Co. v. Kelley (1988),40 Ohio App.3d 10, 15.
 {¶ 24} R.C. 1336.04 provides:
 {¶ 25} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 26} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 {¶ 27} "(2) * * *
 {¶ 28} "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 29} "(1) Whether the transfer or obligation was to an insider;
 {¶ 30} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 31} "(3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 32} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 33} "(5) Whether the transfer was of substantially all of the assets of the debtor;
 {¶ 34} "(6) Whether the debtor absconded;
 {¶ 35} "(7) Whether the debtor removed or concealed assets;
 {¶ 36} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
 {¶ 37} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 38} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 39} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."
 {¶ 40} Pauer first argues there was no evidence to establish she was insolvent at the time of the transfers. We disagree.
 {¶ 41} R.C. 1336.02(A)(1) provides, "A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation." Here, Pauer's creditors presented evidence to establish her only assets at the time of the transfer were the real estate in question and a used van, valued optimistically by Pauer at approximately $9,000.
 {¶ 42} Pauer also contends the trial court erred in finding the relevant date to determine whether she was solvent on the dates of the first two transfers, rather than August 2, 2002, the date of the lien. Pauer argues she was solvent on the latter date, notwithstanding the transfer, because her mother died on July 9, 2002, and she was to inherit one-fourth of her late mother's estate. However, R.C. 1336.01 et seq. makes clear that the relevant date for determining insolvency is the date of the transfer in question. The fact that Pauer was to inherit money after that date is of no moment. Langaa's judgment was in excess of $20,000. Thus, when Pauer transferred the property she became insolvent under R.C. 1336.02(A)(1).
 {¶ 43} Pauer also argues her creditors failed to establish the claims at issue arose prior to the January and May 2002 transfers. However, Pauer testified she was aware of Langaa's claim for sanctions and attorney fees as of January 30, 2001.
 {¶ 44} R.C. 1336.01(C) defines a "claim" as, "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." A "creditor" is "a person who has a claim. R.C. 1336.01(D). The Ohio Supreme Court has held that, "An individual possessing a cause of action in tort is a `creditor' within the meaning of R.C. 1336.01(C) and has the right to question an alleged fraudulent conveyance." Stein v. Brown (1985), 18 Ohio St.3d 305, at paragraph one of the syllabus. There is no logical reason why a different rule should apply to one who alleges a cause of action based on frivolous conduct.
 {¶ 45} Pauer also argues Langaa and Liedtke did not have a claim at the time of the transactions because the Cuyahoga County Court of Common Pleas' award of sanctions was based on a motion rather than on the counterclaims, which were subsequently dismissed. This is a distinction without a difference. Pauer was aware of her creditors' claims before the transfers. In this case, it matters not whether the sanctions actually were awarded on motion rather than on the counterclaims.
 {¶ 46} Pauer also argues the trial court erred in finding she transferred the property with actual intent to hinder, delay, or defraud her creditors.
 {¶ 47} R.C. 1336.04(B) sets forth eleven "badges of fraud" to establish the intent of the debtor. With respect to these badges of fraud, Langaa and Liedtke established the transfer was made to an insider (Pauer's daughter); Pauer retained possession and control of the property after the transfer; Pauer had been sued before the transfer; the transfer constituted substantially all of Pauer's assets; no consideration was received for the transfer; Pauer became insolvent as a result of the transfer; and the transfer occurred shortly before or after Pauer incurred a substantial debt. Thus, Langaa and Liedtke established seven badges of fraud.
 {¶ 48} "If the party alleging fraud is able to demonstrate a sufficient number of badges, the burden of proof then shifts to defendant to prove that the transfer was not fraudulent." Baker Sons Equip. Co.v. GSO Equip. Leasing, Inc. (1993), 87 Ohio App.3d 644, 650, citingCardiovascular Thoracic Surgery of Canton, Inc. v. DiMazzio (1987),37 Ohio App.3d 162, 166. Here, Langaa and Liedtke proved an overwhelming number of badges of fraud (seven of the ten applicable to this case); thus, the burden shifted to Pauer to rebut this evidence. She argues she presented evidence to establish she transferred the property to Janelle to disinherit her other daughter; however, the trial court found Pauer's evidence unpersuasive. We agree.
 {¶ 49} After reviewing the record, we cannot say the trial court's judgment was against the manifest weight of the evidence. Appellant's second assignment of error is without merit.
 {¶ 50} In her third assignment of error, Pauer argues the trial court erred in failing to hold a jury trial when she properly demanded one. Pauer's arguments are unpersuasive.
 {¶ 51} Langaa and Liedtke's claims demanded rescission and foreclosure. There is no right to a jury trial in such equitable actions. See, generally, City Loan Savings Co. v. Howard (1984),16 Ohio App.3d 185, 186; Wannemacher v. Cavalier, 3rd Dist. No. 6-03-12, 2004-Ohio-4020, ¶ 59. But, see, Doney v. Clark (1896),55 Ohio St. 294, at paragraph four of the syllabus, finding a right to jury trial where recovery of value (i.e., money damages) is sought in fraudulent conveyance action.
 {¶ 52} Appellant's third assignment of error is without merit.
 {¶ 53} In her fourth assignment of error, Pauer argues the trial court erred in ordering her to pay court costs. Civ.R. 54(D) provides, "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." We review a trial court's decision to impose costs only for an abuse of discretion. Gnepper v. Beegle (1992),84 Ohio App.3d 259, 263.
 {¶ 54} Pauer argues the trial court in this case should not have imposed costs because she received a reduction in the amount of the sanctions in her appeal to the Eighth District. However, one has nothing to do with the other. Here, Langaa and Liedtke were the prevailing parties, and nothing in the record demonstrates the trial court abused its discretion in requiring Pauer to pay costs.
 {¶ 55} Appellant's fourth assignment of error is without merit.
 {¶ 56} In her fifth assignment of error, Pauer argues the trial court erred in excluding evidence relating to her mother's will and Pauer's expected inheritance. As we discussed in our analysis of Pauer's second assignment of error, such evidence was irrelevant as Pauer's mother died subsequent to the date when Pauer became insolvent. Thus, the trial court did not abuse its discretion in excluding such evidence.
 {¶ 57} Appellant's fifth assignment of error is without merit.
 {¶ 58} Langaa has filed a cross appeal, asserting one assignment of error:
 {¶ 59} "The trial court erred to the prejudice of [p]laintiff-[a]ppellee/[c]ross-[a]ppellant and committed an abuse of discretion in failing to award [p]laintiff exemplary damages and reasonable attorney fee."
 {¶ 60} Punitive damages and attorney fees are available in an action for fraudulent conveyance. Locafrance United States Corp. v. InterstateDistribution Services, Inc. (1983), 6 Ohio St.3d 198, at syllabus. However, in the instant case, Langaa's complaint did not demand punitive damages. While her closing argument brief does contend the evidence entitles her to such damages, she did not plead a claim for such damages in her complaint.
 {¶ 61} Further, while Langaa's complaint demanded attorney fees, she fails to direct us to any authority (save for punitive damages) that would have authorized the trial court to award attorney fees. Under the "American Rule" the parties bear there own attorney fees unless an exception applies, such as a contract or statute allowing a prevailing party to recover attorney fees, or when the prevailing party has recovered punitive damages. See, generally, Green v. Lemarr (2000),139 Ohio App.3d 414, 435. None of these exceptions applies in the instant case. Finally, even assuming Langaa was entitled to an award of attorney fees, she failed to present any evidence as to what attorney fees she incurred. Therefore, the trial court did not abuse its discretion in failing to award punitive damages and/or attorney fees.
 {¶ 62} Cross-appellant's sole assignment of error is without merit.
 {¶ 63} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.
Ford, P.J., Grendell, J., concur.